IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KATHY FRIAGA                                                                                         PLAINTIFF

v.                                          4:14-cv-4063-BAB

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kathy Friaga, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act").  The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (ECF No. 5).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I.     Background:**

Plaintiff protectively filed her application for DIB on October 26, 2010, and for SSI on October 29, 2010, alleging an onset date of March 1, 2010, due to back problems.  (Tr. 203, 207, 251).  For DIB purposes, Plaintiff retained insured status through December 31, 2014.  (Tr. 15,

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __."  The transcript pages for this case are referenced by the designation "Tr."

Finding 1). Plaintiff's applications were denied initially and on reconsideration. An administrative hearing was held on December 15, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 30-52). Following the hearing, the ALJ entered an unfavorable decision on March 29, 2012. (Tr. 81-92). Plaintiff requested the Appeals Council review the decision, and the case was remanded on January 23, 2013. (Tr. 97-99).

A second administrative hearing was held on April 30, 2013, at which Plaintiff again appeared with counsel and testified. (Tr. 53-76). A vocational expert ("VE") and non-examining, consulting physician were also present and testified.

On June 25, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision. (Tr. 12-24). In this decision, the ALJ determined Plaintiff's "degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, neck pain, and mental impairments primarily identified as affective disorder and borderline intellectual functioning" were severe impairments. (Tr. 15, Finding 3). After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment listing. (Tr. 15-17, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 17-21). The ALJ first evaluated Plaintiff's subjective complaints and found she was not entirely credible. The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to perform "unskilled sedentary work" with the following limitations:

> [She may] work with no more than occasional contact with the general public, occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and walk with normal breaks 2 hours in an 8 hour-workday, sit with normal breaks for 6 hours in an 8-hour workday, no limitation pushing or pulling or operation of foot controls, occasionally climb ramps/stairs, occasionally balance,

    stoop, kneel, crouch, no climbing ladders, ropes, or scaffolds, and further limited by
no work involving mathematical calculations. (T. 17).

With the help of the VE, the ALJ determined Plaintiff could not perform her past relevant work ("PRW"). (Tr. 21-22, Finding 6). Based on the VE's testimony, the ALJ found Plaintiff could perform the requirements of the representative occupations of lens inserter, eye glass polisher, and assembler. (Tr. 22-23, Finding 10). The ALJ then concluded Plaintiff was not disabled. (Tr. 23, Finding 11).

On July 2, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision, which denied the request on March 24, 2014. (Tr. 1-4). On April 27, 2014, Plaintiff filed the present appeal. (ECF No. 1). The Parties consented to the jurisdiction of this Court on April 27, 2014 (ECF No. 5). Both Parties have filed appeal briefs, and the case is ready for decision. (ECF Nos. 10, 13).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because

substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. 20 C.F.R. §§ 404.1520(a)-(f); *Cox*, 160 F.3d at 1206. The fact finder only considers Plaintiff's age, education, and work experience in light of her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920.

**III.    Discussion**:

Plaintiff's only argument is the ALJ erred at step three of the sequential evaluation by finding the evidence did not satisfy the requirements of Listing 12.05(C) (intellectual disability). The listing requires (1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) with an onset before age 22, and (3) a separate impairment imposing an additional and significant work related limitation of function. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C); *Hesseltine v. Colvin*, No. 14-


2780 at 5 (8th Cir. August 26, 2015) (citing *Phillips v. Colvin*, 721 F.3d 623, 625 (8th Cir. 2013)).

At her hearings, Plaintiff testified she was placed in a "resource" classroom because of a learning disability, and dropped out of school after completing the eight grade, but held steady employment throughout her life, often working two jobs to "put [her] daughter through college." (Tr. 33-35, 38, 45, 57). According to Plaintiff, she lost her most recent job as a housekeeper after a workplace accident. (Tr. 35-37, 58, 67-68). Plaintiff also testified she handles money, drives, reads the Bible and newspapers, and can follow instructions such as a shopping list, but has problems with math and cannot parse a road map. (Tr. 38-39, 42, 68-69). On her function report, Plaintiff stated one of her hobbies is reading, and her daily activities include making meals and grocery shopping. (Tr. 281, 284-285). Plaintiff also reported she has no problems with memory, concentration, completing tasks, or following instructions. (Tr. 286).

The record also shows Plaintiff was examined by Dr. David Grant, a consulting psychologist, on May 19, 2011, who administered an IQ assessment. (Tr. 439-442). Plaintiff scored a verbal comprehension IQ of 68, a perceptual reasoning IQ of 72, a working memory IQ of 77, and a processing speed IQ of 81. (Tr. 440-441). Plaintiff's full scale IQ was 70, which is in the "extremely low range of measured intelligence." (Tr. 440). Dr. Grant advised,"[i]t did not appear, however[,] that she was trying her best and her true results are possibly a bit higher that [sic] what the testing revealed . . . these results are felt to be a somewhat depressed assessment of her intellectual functioning. (Tr. 440). During the exam, Plaintiff reported no history of mental health treatment, although she was prescribed diazapam by a primary care physician, and reported her activities of daily living included driving, managing her personal finances, completing household chores, shopping, and reading her Bible. (Tr. 439, 441). Dr. Grant diagnosed Plaintiff with mood

disorder, mild mental retardation (provisional), and borderline intellectual functioning (provisional). (Tr. 441). He opined Plaintiff displayed an ability to communicate and interact in a socially adequate manner, demonstrated an ability to cope with the mental/cognitive demands of basic-work like tasks, and could sustain adequate concentration and persistence, but had a difficult time working in an acceptable time frame. (Tr. 441-442). In July 2011, Dr. Brad Williams, a non-examining consultant, submitted a mental RFC assessment and Psychiatric Review Technique and determined Plaintiff had mild limitations in the activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. 476). He opined Plaintiff's "limitations are tied to her physical complaints" and she is "capable of basic work if so motivated." (Tr. 482).

The ALJ considered Listing 12.05(C) in the written decision, and concluded Plaintiff failed to meet the Listing's requirements because:

> the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. WAIS-IV testing yielded a verbal comprehension IQ of 68, a perceptual reasoning IQ of 72, a working memory IQ of 77, a processing IQ of 81, and a full scale IQ of 70. There is no evidence to establish[] deficits in adaptive functioning manifested before age 22. Moreover, the claimant's work history and earning record shows the claimant worked for a number of years sufficient to be insured through December 2014. (Tr. 17).

In the narrative explanation, the ALJ also addressed Dr. Grant's evaluation, Plaintiff's testimony, and Dr. Williams' opinions in detail. (Tr. 19-20).

In a well-researched brief, Plaintiff cites several Eight Circuit cases where courts have remanded cases for consideration of whether a claimant's deficits in adaptive functioning manifested before age 22 due to the existence of a valid IQ score between 60 and 70 as well as evidence the claimant suffered from a learning disability and dropped out of school. *See, e.g., Maresh v.*

*Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Additionally, Plaintiff highlights several authorities for the principle a valid IQ score between 60-70 is significant evidence an intellectual disability manifested before age 22. *See, e.g., Muncy v. Apfel*, 247 F.3d 782, 734 (8th Cir. 2001).

If the critical issue was whether Plaintiff's adaptive functioning manifested itself before age 22, the ALJ's discussion of the issue would be insufficient. The ALJ, however, also cited the absence of a valid IQ score between 60-70 as a basis for his conclusion Plaintiff did not meet the criteria of Listing 12.05(C). (Tr. 17). Although the record includes one full scale IQ score of 70 and a verbal comprehension IQ of 68, Dr. Grant's comments on Plaintiff's IQ scores indicate the results were not valid. (Tr. 440). Consequently, Plaintiff has not met her burden to establish her impairments meet the requirements of Listing 12.05(C). *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see also Johnson v. Barnhart*, 390 F.3d 1067, 1070-1071 (8th Cir. 2004) (stating a claimant did not meet his burden to establish he met the criteria of Listing 12.05, in part, because his IQ were not valid).

**IV.    Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 31st day of August, 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE